UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

WILLIAM JAMES WATT,

    Petitioner,

v.

CHERRY LINDAMOOD,

    Respondent.

Case No. 1:17-cv-00064

Judge William L. Campbell, Jr.
Magistrate Judge Alistair E. Newbern

To:    The Honorable William L. Campbell, Jr., District Judge

**REPORT AND RECOMMENDATION**

In January 2012, a Tennessee jury convicted Petitioner William James Watt of three counts of rape of a child and three counts of aggravated sexual battery against his four-year-old step-granddaughter. (Doc. No. 5-12.) Watt, who was older than seventy at the time of trial, is currently serving a prison sentence of thirty-five years. (*Id.*) Before the Court is Watt's petition for a writ of habeas corpus under 28 U.S.C. § 2254, arguing that his confinement is unconstitutional under the Sixth Amendment, which guarantees criminal defendants the right to counsel. (Doc. No. 1.) Respondent Cherry Lindamood answered Watt's petition and filed the state-court record. (Doc. Nos. 5, 6.) Watt filed a reply (Doc. No. 13) and, with the Court's permission, Lindamood filed a surreply (Doc. Nos. 16, 17). For the reasons that follow, having considered the parties' arguments, the underlying record, and the stringent standards of the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996), the Magistrate Judge will recommend that Watt's petition be denied.

# I.    Background

## A.    Factual Background

The Tennessee Court of Criminal Appeals (TCCA) provided the following summary of the

evidence presented during Watt's trial:

> At trial, the victim's mother testified that in 2010, she left her three children with her mother and [Watt], whom the children called "Papa," once a week and that she and her family often ate dinner with her mother and [Watt]. *See State v. William James Watt*, No. M2012-01487-CCA-R3-CD, slip op. at 3 (Tenn. Crim. App., Nashville, Jan. 10, 2014). During the fall of that year, the four-year-old victim, the youngest of the three children, told her mother that [Watt] had "'tickled her tootie.'" *Id.*, slip op. at 4. The victim elaborated that she and [Watt] were in the bed without their pants on when "she tickled him and that he tickled her." *Id.* The victim "said that [Watt] told her that she would never see him again if she told anyone." *Id.* The victim's mother questioned her son about the revelation, and he said he did not know anything about it. After speaking with her husband and her pastor, the victim's mother telephoned the police and reported the victim's allegations.

> The victim submitted to a forensic interview and a medical examination. During a controlled telephone call between the victim's mother and [Watt], [Watt] "initially denied that he had done anything wrong" but later "'confess[ed].'" *Id.*, slip op. at 5. In the recorded conversation, which was played for the jury, [Watt] told the victim's mother that "the victim told him that she liked to have her 'tootie'" tickled while the two lay on the bed together. *Id.* [Watt] said that the victim had then "reached down and touched herself and said that was her 'tootie'" before he admonished her "that 'boys and girls don't touch each other like that.'" *Id.* The conversation continued for some time before [Watt] said, "'You can go ahead and shoot me, I touched her once. And, yes, it was under the covers.'" *Id.* He told the victim's mother that he "just touched [the victim] with two fingers to tickle her 'at the very top' of [her] vagina.'" *Id.* [Watt] insisted that it was an isolated incident and said, "'If there is any way you can keep me out of jail, I would appreciate it. I would do just about anything.'" *Id.*

> The then six-year-old victim testified that [Watt] had "tickled" her "tootie" on three separate occasions, "once in the attic of his home, once in his bathroom, and once in her 'Nana's room.'" *Id.*, slip op. at 6. The victim recalled that in the attic, [Watt] "touched her 'tootie' on her skin with his hands and a flower" and that he touched both the inside and the outside of her "tootie." On that same occasion, she touched [Watt's] "tootie," which she described as "long and stretchy." *Id.* She testified that she and [Watt] also touched each other under the covers "in her Nana's room." She testified that the two also "tickled" each other's private areas while in the bathroom. *Id.*

[Watt's] wife testified that she observed two instances of [Watt's] behaving inappropriately toward the victim. On both occasions, she walked in on the pair, and [Watt] had his shirt open and his hands on the victim's legs. *See id.*, slip op. at 7. She said that although it did "occur to her that this might be inappropriate, she could not 'ever fathom that he would do that.'" *Id.* When [Watt's] wife discussed the victim's allegations with him, he did not deny the victim's claims and "said he was hoping that they could keep it within the family." *Id.*, slip op. at 8.

When interviewed by the police, the 71-year-old [Watt] said that "on three occasions [the victim] entered the bathroom" and, on two of those occasions, she saw him urinating. *Id.*, slip op. at 9. [Watt] said that he did not touch the victim on those occasions but that he did touch her one time while the two watched cartoons. He claimed that the victim had asked him to tickle her "tootie," and that he had obliged. He maintained, however, "that at no time did he 'do any insertion with [his] finger or anything else.'" *Id.* On another occasion in [Watt's] bedroom, the victim "pulled his shorts down," and her "lips touched his penis" twice. *Id.*, slip op. at 10. On that same occasion, [Watt] "also tickled and 'rub[bed]' her tootie for 'maybe a total of four minutes.'" *Id.* He identified the victim's "tootie" as "the top part of [her] vaginal area where he believed the clitoris was located." *Id.* [Watt] told the police that the four-year-old victim had "asked him to put his penis inside her, and he told her no." *Id.* He did acknowledge that on one occasion, the victim "'rolled over against it,' and his penis touched her leg. He did not recall whether it was the inside or the outside of her leg." *Id.*

[Watt] did not deny the veracity of the statements he made during the recorded conversation with the victim's mother or in his interview with the police. He did, however, deny having touched the victim inappropriately in the attic. *See id.*, slip op. at 12. He admitted tickling the victim "'above' where her clitoris would be located" while the two watched cartoons but denied that he rubbed the victim's vaginal area and insisted that he did not penetrate the victim. With regard to the incident in his bedroom, [Watt] testified that the victim "asked to play 'tent' and told him that he was going to have a surprise part." *Id.* He said that "his shorts slid down" as he propped up the sheet with his legs and that the victim placed her lips on "'the rim [of his penis]'" and "yelled, '[S]urprise.'" *Id.* "During cross-examination, [Watt] testified that he did not do anything wrong" and maintained "that at no time did he have any sexual desire to touch" the victim. *Id.*

(Doc. No. 5-24, PageID# 1667–69.)

### B. Procedural History

#### 1. Pretrial Motion to Substitute Counsel and Continue the trial

The TCCA summarized the pretrial motions practice in Watt's case as follows:

Before trial, [Watt] filed motions to substitute his counsel and to continue his trial. The trial court held a hearing on the motions [on January 18, 2012,] during

which the following evidence was presented: Counsel [Dwight] Scott informed the court that he had filed a motion for substitution of counsel, which was contingent upon the trial court's granting a second motion he filed for a continuance of the trial. The trial court stated that, if [Watt] chose to hire an attorney, the attorney needed to be ready by the date of trial, January 23, 2012. Counsel Scott said that, if the trial court denied the motion for continuance, he would not represent [Watt] because he could not be prepared for trial. [Watt's] court[-]appointed attorney, Counsel [Michael] Engle, informed the court that he was not yet ready for trial. He said that, when he had learned that [Watt] had retained other counsel, he ceased his trial preparation. Counsel Scott informed the trial court that [Watt] had retained him on December 30, 2011, and that he had filed his motions on January 6, 2012. The trial court expressed concern that neither attorney was prepared for trial. The court noted that the trial had been scheduled since April 2011.

The State informed the trial court that it would suffer prejudice by delaying the trial. It noted that the victim was "a very young child," who was four at the time of the alleged offenses. The State offered an alternate trial date of February 13, 2012. The trial court asked Counsel Scott if he could be ready by the 13th. Counsel Scott stated that he had another trial set for that same date. The trial court then asked Counsel Engle if he could be ready by that date. Counsel Engle testified that he also was scheduled to be in court on that date.

The trial court asked Counsel Scott why [Watt] had waited until such a late date to hire an attorney. Counsel Scott informed the court that [Watt] had approached several local attorneys but was unable to come to a financial agreement with any of them. [Watt] was referred to Counsel Scott by another attorney, and Counsel Scott agreed to represent him, contingent upon the trial being continued.

The State expressed its desire to go forward with Counsel Engle's representing [Watt], stating its belief that [Watt] was hiring Counsel Scott to delay the trial. The trial court ordered that the trial remain scheduled for January 23, 2012, with Counsel Engle representing [Watt].

(Doc. No. 5-12, PageID# 787.) Following the hearing, the trial court issued a written order denying Watt's motion to substitute counsel and continue the trial. (Doc. No. 5-1.)

### 2. Conviction and Direct Appeal

Watt's trial in Davidson County Criminal Court began on January 23, 2012, with Watt represented by Engle. (*Id.*) On January 25, 2012, the jury found Watt guilty of all six counts, three counts of rape of a child and three counts of aggravated sexual battery. (*Id.*) Watt filed a direct appeal, arguing that: (1) there was insufficient evidence to sustain two of the convictions for rape

4

of a child and one of the convictions for aggravated sexual battery; (2) the trial court erred when it denied his motion to substitute counsel and continue the trial; and (3) his thirty-five year sentence was excessive. (Doc. No. 5-12.) The TCCA rejected those arguments and affirmed Watt's convictions and sentence. (*Id.*) In affirming the trial court's order denying Watt's motion to substitute counsel and continue the trial, the TCCA held as follows:

> [Watt] asserts that the trial court denied his motion based upon its "unfounded conclusion that [Watt] made the request in bad faith to delay the trial." In fact, he asserts, he had made several attempts to retain counsel but was unable to reach a financial arrangement with a lawyer until three weeks before trial. The State counters [Watt] has failed to show that the trial court abused its discretion when it denied [Watt's] motion, which was filed only seventeen days before [Watt's] trial date that had been set since April 2011.

> The decision to grant a motion for a continuance is left to the trial court's discretion, and a denial of the requested continuance will not be overturned on appeal absent a clear showing of an abuse of that discretion. *State v. Russell*, 10 S.W.3d 270, 275 (Tenn. Crim. App. 1999) (citing *State v. Melson*, 638 S.W.2d 342, 359 (Tenn. 1982); *Baxter v. State*, 503 S.W.2d 226, 230 (Tenn. Crim. App. 1973)). We will reverse the denial of a continuance only if the trial court abused its discretion and the defendant was prejudiced by the denial. *State v. Thomas*, 158 S.W.3d 361, 392 (Tenn. 2005). "An abuse of discretion is demonstrated by showing that the failure to grant a continuance denied defendant a fair trial or that it could be reasonably concluded that a different result would have followed had the continuance been granted." *Id.* (citing *State v. Hines*, 919 S.W.2d 573, 579 (Tenn. 1995)).

> The right to counsel is grounded in the constitution. It is a fundamental constitutional principle that a person is entitled to a fair trial. U.S. Const. amend. XIV, § 1 (providing that no State shall "deprive any person of life, liberty, or property, without due process of law"). To protect this right, a person who is accused of a crime is entitled to representation by counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). This right is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. *Gideon v. Wainwright*, 372 U.S. 335, 342 (1963); *Vaughn v. State*, 202 S.W.3d 106, 116 (Tenn. 2006); *State v. Northington*, 667 S.W.2d 57, 60 (Tenn. 1984); *see* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."); Tenn. Const. art. I, § 9 ("[I]n all criminal prosecutions, the accused hath the right to be heard by himself and his counsel.").

> The United States Supreme Court has further observed, however, that "'while the right to select and be represented by one's preferred attorney is

comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers.'" *State v. White*, 114 S.W.3d 469, 475–76 (Tenn. 2003) (citing *Wheat v. United States*, 486 U.S. 153, 159 (1988); *State v. Huskey*, 82 S.W.3d 297, 305 (Tenn. Crim. App. 2002)). Thus, under both the Sixth Amendment and article I, section 9, the right to the counsel of one's choosing "must be balanced against the requirements of the fair and proper administration of justice." *Id.* (citing *Huskey*, 82 S.W.3d at 305 and *United States v. Micke*, 859 F.2d 473, 480 (7th Cir. 1988)).

In the case under submission, we conclude that [Watt] failed to prove that the trial court abused its discretion when it denied his motion for continuance. In April 2011, the parties scheduled [Watt's] trial for January 23, 2012. [Watt] retained Counsel Scott on December 30, 2011. On January 6, 2012, just seventeen days before trial, Counsel Scott filed a motion to substitute himself as counsel and to continue the case. The trial court inquired about available dates for both Counsel Scott and [Watt's] appointed counsel, Counsel Engle. Counsel Engle said he could be ready to proceed with trial on January 23, 2012. Counsel Scott said he would be unable to be ready on that date. The parties could not find a date in the months after the scheduled trial date upon which they could all be available. After much discussion and the parties' inability to all be available, the trial court denied the motions for the substitution of counsel and for a continuance. We conclude that [Watt] was provided counsel at his trial. The counsel of his choosing was unable to be ready on his trial date and was unavailable on the other dates offered by the trial court. [Watt] has failed to prove that the trial court abused its discretion by showing that the outcome of his trial would have been different had the trial court granted the motion to continue. He is not entitled to relief on this issue.

(*Id.* at PageID# 804–05.) The Tennessee Supreme Court denied Watt's application for permission to appeal the TCCA's decision. (Doc. No. 5-15.)

### 3.    Post-Conviction Proceedings

On March 18, 2015, Watt filed a petition for post-conviction relief in Davidson County Criminal Court. (Doc. No. 5-16.) In an amended petition, filed on August 13, 2015, Watt argued that his trial counsel provided ineffective assistance by failing to adequately prepare for trial; failing to call witnesses Brenda Johnson and Bill Flume; and inadequately cross-examining the victim. (*Id.*) Watt also argued that his appellate counsel provided ineffective assistance by failing to request oral argument and filing a brief that did not address some of the victim's equivocal testimony. (*Id.*) The post-conviction court held an evidentiary hearing on Watt's amended petition

6

(Doc. No. 5-17), and the TCCA provided the following description of the evidence presented at that hearing:

> At the October 14, 2015 evidentiary hearing, trial counsel, an assistant public defender for 28 years, testified that he was appointed to represent [Watt] in 2011. He prepared for [Watt]'s trial from the time he was appointed to the case until the Christmas holiday in 2011, when [Watt] informed trial counsel of his intent to retain new counsel "right after New Year's." At that point, [Watt]'s trial was scheduled for January 23, 2012. At a January 18, 2012 status hearing, [Watt]'s newly-retained counsel moved the trial court for a continuance, citing his inability to be ready for [Watt]'s trial. Trial counsel told the trial court that he, too, was not fully prepared for trial at that point because of [Watt]'s desire for new counsel. After the trial court refused to grant a continuance in the case so that [Watt]'s newly-retained counsel[] could prepare for trial, trial counsel resumed his trial preparations. He testified that he would have liked to have had the roughly two weeks of trial preparation that he lost, but he did not feel unprepared for [Watt]'s January 23, 2012 trial.
>
> Trial counsel testified that he was "well aware of" potential witness Brenda Johnson, having received from her, via newly-retained counsel, a list of questions that should be asked of [Watt]'s wife and the victim's mother. Trial counsel said that he spoke with her via telephone on January 19, 2011. He said that it was his understanding that Ms. Johnson had been told that the victim's mother and grandmother had been coaching her prior to trial but that Ms. Johnson's information in this regard "was not really specific and not really explicit enough" to warrant calling her as a witness. Counsel emphasized that he would not have hesitated to call Ms. Johnson as a witness had he been "convinced this was competent and persuasive evidence."
>
> With regard to his questioning of the victim, who was six years old at the time of trial, trial counsel testified that, in his experience, "it's not always effective and persuasive to a jury for a defense attorney to attack" a child witness. For that reason, he made sure his cross-examination of the victim was thorough but not overbearing.
>
> Appellate counsel testified that she prepared and filed a brief on [Watt]'s behalf but did not request oral argument in the case. She explained that she viewed the appellate brief "as the primary form of advocacy" and that she did not often request oral argument. Appellate counsel said that she challenged the sufficiency of the convicting evidence vis-à-vis the State's election of offenses and that she used the many times that the victim gave equivocal answers as part of that challenge.
>
> The victim's grandmother, who was also [Watt]'s ex-wife, testified that Brenda Johnson was her "best friend for years" but that they were "no longer friends." She denied that she and the victim's mother had ever coached the victim

7

in regard to her trial testimony. Indeed, she said that she had never discussed the allegations with the victim.

The victim's mother also denied coaching the young victim, saying, "It was important to me not to . . . coach her. I wanted her to say what happened to her."

Brenda Johnson testified that she met [Watt] when he married the victim's grandmother, who was her best friend. She claimed that the victim's grandmother told her that she and the victim's mother had "spent time coaching [the victim] and trying to help [the victim] know what to say and do." She alleged that the victim's grandmother discussed the allegations and [Watt's] trial while at lunch with the victim when Ms. Johnson was present. Ms. Johnson said that the victim "covered both ears and said, just please stop talking." She said that she did not attend [Watt's] trial but had chosen to come forward because she felt "like there was not a correct sentence." She acknowledged that there were "probably some things [Watt] did wrong," but she placed some of the blame on the victim, who "had been exposed for a long time to pornography."

[Watt] testified that trial counsel visited him one time while he was in jail and that the two met on four occasions after [Watt] was released on bond. [Watt] said that trial counsel provided him with the discovery materials in the case. He said that immediately following his first meeting with trial counsel in the spring of 2011, he decided that he wanted to retain different counsel, explaining, "I formed an opinion that if I possibly could raise the money that I would rather have a paid attorney instead of the public defender because he . . . already had a heavy case load." [Watt] said that it took him nine months to raise the funds to hire a new lawyer.

[Watt] testified that he asked trial counsel to "look into the home life of the child" because "she had been exposed to pornography on the computer while her father was watching" and because she had been subjected to physical abuse at the hands of her father. He claimed that trial counsel refused because "[h]e did not want to go outside the Davidson County lines to do any investigations."

[Watt] said that he asked trial counsel to call Bill Flume as a witness because Mr. Flume "knew these people as well." He said that Mr. Flume would have testified that [Watt's] ex-wife told Mr. Flume that the victim had complained "that her tootie was hurting" after [Watt] had been jailed for months.

During cross-examination, [Watt] admitted that he did not telephone the police after he saw the victim's father strike her, claiming that his ex-wife had threatened to divorce him if he did so. [Watt] also admitted that he used donated funds to secure his release on bond rather than hire an attorney and that he used other funds to hire a lawyer to assist in his divorce rather than hire an attorney to handle his criminal case.

(Doc. No. 5-24, PageID# 1669–72 (footnote omitted).) The post-conviction court denied Watt's amended petition, finding that Watt had failed to show by clear and convincing evidence that his trial and appellate counsel were deficient and had failed to show any resulting prejudice. (Doc. No. 5-16.)

The TCCA affirmed the post-conviction court's order, explaining its reasoning as follows:

> We view [Watt's] claim with a few well-settled principles in mind. Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. A postconviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578–79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

> [Watt] claims that his trial counsel performed deficiently by failing to adequately prepare for trial, by failing to call Ms. Johnson as a witness, and by failing to sufficiently cross-examine the victim. He contends that, without these deficiencies, the outcome of his trial would have been different. [Watt] asserts that his appellate counsel performed deficiently by failing to request oral argument and by failing to include crucial portions of the victim's testimony in her challenge to the sufficiency of the convicting evidence and that her deficiencies prejudiced the outcome of his appeal.

> Before a petitioner will be granted post-conviction relief based upon a claim of ineffective assistance of counsel, the record must affirmatively establish, via facts clearly and convincingly established by the petitioner, that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and that counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When considering a claim of ineffective assistance of counsel, a reviewing court "begins with the strong presumption that counsel provided adequate assistance and used reasonable professional judgment to make all significant decisions," *Kendrick v. State*, 454 S.W.3d 450, 458 (Tenn. 2015) (citing *Strickland*, 466 U.S. at 689), and "[t]he petitioner bears the burden of overcoming this presumption," *id.* (citations omitted). We will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

A claim of ineffective assistance of counsel is a mixed question of law and fact. *Kendrick*, 454 S.W.3d at 457; *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010); *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). When reviewing the application of law to the post-conviction court's factual findings, our review is de novo, and the post-conviction court's conclusions of law are given no presumption of correctness. *Kendrick*, 454 S.W.3d at 457; *Fields*, 40 S.W.3d at 457–58; *see also State v. England*, 19 S.W.3d 762, 766 (Tenn. 2000).

In our view, [Watt] failed to establish by clear and convincing evidence facts supporting a conclusion that either trial or appellate counsel performed deficiently.

Trial counsel's accredited testimony established that, although he lost two weeks' preparation time after [Watt] tried to change attorneys, he was fully prepared for [Watt's] trial. His accredited testimony also established that trial counsel interviewed Ms. Johnson but deemed her potential testimony neither credible nor persuasive. Furthermore, the post-conviction court found that Ms. Johnson's testimony lacked credibility. With regard to his cross-examination of the victim, we agree with the post-conviction court that trial counsel's decision not to attack the six-year-old victim was a reasonable trial strategy.

[Watt] presented no evidence to suggest that appellate counsel's failure to request oral argument affected the outcome of his appeal. Appellate counsel's accredited testimony established that it was her belief that the appellate brief was the primary vehicle of appellate advocacy. Moreover, [Watt] failed to show how appellate counsel's inclusion in her brief of certain portions of the victim's testimony would have altered the outcome on appeal. As is indicated by our opinion on direct appeal, this court reviewed the trial record in its entirety when considering his challenge to the sufficiency of the convicting evidence.

(Doc. No. 5-24, PageID# 1673–75.) The Tennessee Supreme Court denied Watt's application for permission to appeal on February 16, 2017. (Doc. No. 5-27.)

On July 13, 2017, Watt initiated this action by filing a petition for a writ of habeas corpus under 28 U.S.C. § 2254 asserting that his convictions are unconstitutional under the Sixth Amendment, which applies to state criminal proceedings through the Fourteenth Amendment. (Doc. No. 1.) Watt's petition argues that he is entitled to relief under § 2254(d) because the TCCA's decisions regarding his Sixth Amendment claims were contrary to or an unreasonable application of clearly established federal law and based on unreasonable factual determinations. (*Id.*) Specifically, Watt challenges the TCCA's affirmance of the trial court's order denying his motion to substitute counsel and continue the trial. (*Id.*) He also challenges the TCCA's affirmance of the post-conviction court's order denying him post-conviction relief, arguing that his trial and appellate counsel were ineffective in several ways. (*Id.*) In particular, Watt asserts that trial counsel was unprepared for trial; failed to call Johnson as a witness; failed to investigate the victim's homelife and relationship with her father; failed to interview or call Flume as a witness; and inadequately cross-examined the victim. (*Id.*) He argues that appellate counsel did not request oral argument and failed to raise important issues regarding the victim's testimony. (*Id.*)

Lindamood answered Watt's petition, conceding that it is timely filed, but arguing that Watt procedurally defaulted his claims that trial counsel failed to investigate the victim's homelife and failed to interview or call Flume as a witness because Watt failed to exhaust his state remedies regarding these two ineffective-assistance-of-counsel claims. (Doc. No. 6.) Lindamood further argues that Watt has not shown cause and prejudice to excuse this default and that Watt is not entitled to relief for any of his claims because he has not satisfied the requirements of § 2254(d). (*Id.*) Watt filed a reply (Doc. No. 13), and Lindamood filed a surreply (Doc. No. 17) with the Court's permission (Doc. No. 16). This matter is now ripe for the Court's review.

## II.        Legal Standard

Watt's habeas petition is governed by 28 U.S.C. § 2254(d), as amended by AEDPA. The statute provides that:

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2). The Supreme Court has repeatedly held "that AEDPA, by setting forth [these] necessary predicates before state-court judgments may be set aside, 'erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court.'" *White v. Wheeler*, 136 S. Ct. 456, 460 (2015) (quoting *Burt v. Titlow*, 571 U.S. 12, 19 (2013)).

Under § 2254(d)(1), a state court's decision is "contrary to" clearly established federal law only "if the state court applies a rule different from the governing law set forth" in the Supreme Court's holdings "or if it decides a case differently than" the Supreme Court has "on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)). A state court's "decision is an unreasonable application of [the Supreme Court's] clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case[.]" *White v. Woodall*, 572 U.S. 415, 426 (2014). Notably, to be actionable under § 2254(d)(1), a state court's unreasonable application of Supreme Court precedent "'must be objectively unreasonable, not merely wrong; even clear error will not suffice.'" *Woods v. Donald*, 575 U.S. 312, 316 (2015) (quoting *Woodall*, 572 U.S. at 419); *see also Williams*, 529 U.S. at 411 ("[A] federal habeas court

may not issue the writ simply because it concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."). Instead, the petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

Under § 2254(d)(2), habeas relief is available if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). However, the statute provides that a state court's factual determinations "shall be presumed to be correct" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.* § 2254(e)(1); *see also Davis v. Ayala*, 576 U.S. 257, 271 (2015) ("State-court factual findings . . . are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'" (quoting *Rice v. Collins*, 546 U.S. 333, 338–39 (2006))).

AEDPA thus "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Hardy v. Cross*, 565 U.S. 65, 66 (2011) (quoting *Felkner v. Jackson*, 562 U.S. 594, 598 (2011)). The Supreme Court has held that the AEDPA standard is difficult to meet "because it was meant to be." *Harrington*, 562 U.S. at 102; *see also Burt*, 571 U.S. at 20; *Metrish v. Lancaster*, 569 U.S. 351, 357–58 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). The statute enforces the principle "that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. at 102–03 (quoting

13

*Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring)); *see also Woods*, 575 U.S. at 316.

AEDPA also imposes a "total exhaustion requirement," providing that "'[a]n application for a writ of habeas corpus . . . shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State'" with respect to each claim, or such remedies are no longer available. *Rhines v. Weber*, 544 U.S. 269, 274 (2005) (second and third alteration in original) (quoting 28 U.S.C. § 2254(b)(1)(A)); *see also* 28 U.S.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented."). This "exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts[.]" *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). AEDPA therefore requires a petitioner to "properly present[] his or her claims through one 'complete round of the State's established appellate review process.'" *Woodford v. Ngo*, 548 U.S. 81, 92 (2006) (quoting *id.* at 845). A petitioner incarcerated in Tennessee exhausts all available state remedies under AEDPA once the TCCA denies a claim of error. *Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003) (quoting Tenn. Sup. Ct. R. 39 (exhaustion of remedies)).

"Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance." *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991). Under the doctrine of procedural default, a petitioner who may no longer present claims in state court because he or she failed to meet state procedural requirements must "demonstrate cause for his [or her] state-court default of *any* federal

14

claim, and prejudice therefrom, before the federal habeas court will consider the merits of that claim." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). The one exception to this doctrine "is the circumstance in which the habeas petitioner can demonstrate a sufficient probability that [the federal habeas court's] failure to review his [or her] federal claim will result in a fundamental miscarriage of justice." *Id.*

## III.     Analysis

Watt's petition presents both procedurally defaulted and properly exhausted claims. The Court considers these claims separately under the relevant standards.

### A.     Watt's Procedurally Defaulted Claims

Lindamood argues that Watt procedurally defaulted two of his ineffective-assistance-of-counsel claims by failing to present them to the TCCA during his post-conviction appeal and that Watt has not shown the required cause or prejudice for this Court to consider those claims on the merits. (Doc. No. 6.) The two claims at issue are Watt's claims that trial counsel: (1) failed to investigate the victim's homelife and relationship with her father; and (2) failed to interview and call Flume as a witness. (*Id.*)

Watt has not responded to Lindamood's arguments on this point, and the record shows that Watt's post-conviction appellate brief to the TCCA (Doc. No. 5-22) does not mention either of these theories as grounds for his ineffective-assistance-of-counsel claims. Watt therefore failed to exhaust his state remedies with respect to these claims. *See Kelly v. Lazaroff*, 846 F.3d 819, 828 (6th Cir. 2017) ("[T]he doctrine of exhaustion requires that the same claim *under the same theory* be presented to the state courts before raising it in a federal habeas petition." (quoting *Wagner v. Smith*, 581 F.3d 410, 417 (6th Cir. 2009))). Lindamood is correct that the statute of limitations for filing post-conviction actions in Tennessee is one year and that petitioners may not file multiple petitions attacking a single judgment. *See* Tenn. Code Ann. § 40-30-102(a), (c). The Court

15

therefore finds that both claims are procedurally defaulted and, consequently, that Watt has "deprived the state courts of an opportunity to address those claims in the first instance." *Coleman*, 501 U.S. at 732; *see also West v. Carpenter*, 790 F.3d 693, 697 (6th Cir. 2015) ("If the petition[er] fails to raise a claim on appeal, in violation of a state procedural rule, that claim is subject to procedural default and will not be reviewed by federal courts unless the petitioner demonstrates cause and prejudice for his default."); *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998) (holding that petitioner procedurally defaulted an "ineffective[-]assistance claim rest[ing] on a theory which [was] separate and distinct from the one previously considered and rejected in state court").

Watt has not acknowledged this procedural default, much less shown cause for it and resulting prejudice as required for this Court to reach the merits of procedurally-defaulted claims. *See Edwards*, 529 U.S. at 451. Nor has Watt shown that failure to review these claims "will result in a fundamental miscarriage of justice." *Id.* The Court therefore finds that AEDPA bars relief on these two ineffective-assistance-of-counsel claims. *See id.*; *Coleman*, 501 U.S. at 731–32.

### B. Watt's Remaining Claims

Watt's remaining claims for habeas relief also arise under the Sixth Amendment and concern: (1) the right to counsel of choice and Watt's motion to substitute counsel and continue the trial; (2) the right to effective assistance of counsel and Watt's arguments that trial counsel was ineffective because he was unprepared for trial, failed to call Johnson as a witness, and inadequately cross-examined the victim; and (3) Watt's arguments that appellate counsel was ineffective because she failed to request oral argument and failed to raise issues related to the victim's testimony. (Doc. No. 1.)

### 1. Right to Counsel of Choice

The Supreme Court has held that one element of the Sixth Amendment right to counsel "is the right of a defendant who does not require appointed counsel to choose who will represent him."

*United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006). Watt argues that he "has made a substantial showing that he was deprived of his Sixth Amendment right to counsel of his choice as the trial court wrongfully refused substitution of retained counsel." (Doc. No. 13, PageID# 1749.) But that is not the standard Watt must meet to obtain relief in this action. Under AEDPA, the question for this Court is whether the TCCA's adjudication of Watt's right-to-counsel-of-choice claim resulted in a decision that was contrary to or involved an unreasonable application of federal law as determined by Supreme Court precedent, 28 U.S.C. § 2254(d)(1), or was based on an unreasonable determination of the facts in light of the evidence presented in state court, *id.* § 2254(d)(2). After careful review of the record and the parties' arguments, the Court finds that Watt has not overcome any of these formidable barriers to habeas relief as required by AEDPA.

First, Watt has not shown that the TCCA's decision regarding his motion to substitute counsel and continue the trial was "contrary to" clearly established federal law regarding the Sixth Amendment right to counsel of choice. *Id.* § 2254(d)(1). The TCCA relied on the Tennessee Supreme Court's holding in *State v. White*, 114 S.W.3d 469, 475–76 (Tenn. 2003), for the principle that, "under both the Sixth Amendment and article I, section 9, [of the Tennessee Constitution,] the right to counsel of one's choosing 'must be balanced against the requirements of fair and proper administration of justice.'" (Doc. No. 5-12, PageID# 805.) After reviewing the pretrial record, the TCCA held that Watt "failed to prove that the trial court abused its discretion when it denied his motion for continuance" because "[t]he counsel of his choosing was unable to be ready on his trial date and was unavailable on the other dates offered by the trial court." (*Id.*) The TCCA therefore affirmed the trial court's order denying Watt's motion to substitute counsel and continue the trial. This Court finds that the TCCA's analysis accords with the Supreme Court's holding in *United*

*States v. Gonzalez-Lopez* that "the right to counsel of choice 'is circumscribed in several important respects[,]'" including that a trial court has "wide latitude in balancing the right to counsel of choice against the needs of fairness and against the demands of its calendar." 548 U.S. at 144, 152 (first quoting *Wheat v. United States*, 486 U.S. 153, 159 (1988); then citing *id.* at 163–164; then citing *Morris v. Slappy*, 461 U.S. 1, 11–12 (1983)). Indeed, the Supreme Court has long held that "broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the assistance of counsel." *Morris*, 461 U.S. at 11–12 (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964). Watt therefore has not shown that the TCCA "applie[d] a rule different from the governing law set forth" in the Supreme Court's holdings. *Bell*, 535 U.S. at 694. Nor has he pointed to any case with "a set of materially indistinguishable facts" that the Supreme Court decided differently. *Id.* Watt discusses *Faretta v. California* in his reply brief (Doc. No. 13), but the facts of that Supreme Court case are readily distinguishable because they involved a criminal defendant who, "[w]ell before the date of trial . . . requested that he be permitted to represent himself." 422 U.S. 806, 807 (1975). *Gonzalez-Lopez* itself is distinguishable because it is "not a case about a court's power . . . to make scheduling and other decisions that effectively exclude a defendant's first choice of counsel." 548 U.S. at 152. Watt's reliance on cases from lower federal courts is also unpersuasive; AEDPA expressly provides that only Supreme Court cases may be considered in determining whether a state court's decision is contrary to or an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d)(1); *Lopez v. Smith*, 574 U.S. 1, 6 (2014) ("AEDPA permits habeas relief only if a state court's decision is 'contrary to, or involved an unreasonable application of, clearly established Federal law' as determined by [the Supreme] Court, not by the

courts of appeals." (quoting *id.*)). Watt therefore has not satisfied the "contrary to" prong of § 2254(d)(1).

Nor has Watt shown that the TCCA's decision was an unreasonable application of clearly established federal law regarding the right to counsel of choice. *See Woodall*, 572 U.S. at 426. As explained, Supreme Court precedent provides a trial court with "wide latitude" to balance "the right to counsel of choice against the needs of fairness, and against the demands of its calendar." *Gonzalez-Lopez*, 548 U.S. at 152 (first citing *Wheat*, 486 U.S. at 163–164; then citing *Morris*, 461 U.S. at 11–12). In light of this broad discretion, "only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the assistance of counsel." *Morris*, 461 U.S. at 411–12 (quoting *Ungar*, 376 U.S. at 589). Here, Watt's counsel of choice filed a motion to substitute counsel and continue the trial seventeen days before the scheduled trial date. (Doc. No. 5-2.) At a hearing on that motion, held five days before trial, he stated that he was not ready to proceed on the scheduled trial date and was not available on a proposed alternative date. (*Id.*) At the same hearing, Watt's court-appointed counsel stated that he planned to be ready to proceed on the scheduled trial date. (*Id.*) Whether this Court believes that Watt's motion for a continuance was reasonable or the trial court's order denying it was arbitrary is irrelevant under AEDPA. *See Williams*, 529 U.S. at 411. Watt has not carried his burden to show that the TCCA's application of Supreme Court precedent affording trial courts wide latitude to make scheduling decisions was "objectively unreasonable[,]" *Woods*, 575 U.S. at 316, and "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement[,]" *Harrington*, 562 U.S. at 103. Watt is therefore not entitled to relief under the "unreasonable application" prong of § 2254(d)(1).

Finally, Watt has not shown that the TCCA's decision affirming the trial court's denial of his motion to substitute counsel and continue the trial "was based on an unreasonable determination of facts" as required to obtain relief under § 2254(d)(2). AEDPA requires district courts to presume that a state court's factual findings are correct, subject to rebuttal by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Here, the TCCA provided the following factual findings in analyzing the trial court's order:

> In April 2011, the parties scheduled [Watt's] trial for January 23, 2012. [Watt] retained Counsel Scott on December 30, 2011. On January 6, 2012, just seventeen days before trial, Counsel Scott filed a motion to substitute himself as counsel and to continue the case. The trial court inquired about available dates for both Counsel Scott and [Watt's] appointed counsel, Counsel Engle. Counsel Engle said he could be ready to proceed with trial on January 23, 2012. Counsel Scott said he would be unable to be ready on that date. The parties could not find a date in the months after the scheduled trial date upon which they could all be available. After much discussion and the parties' inability to all be available, the trial court denied the motions for the substitution of counsel and for a continuance.

(Doc. No. 5-12, PageID# 805.) Watt has not carried his burden to show by clear and convincing evidence that any of these factual findings is incorrect. He argues only that "[a]ny suggestion [he] was using his choice of counsel to delay his trial was unsupported by the evidence." (Doc. No. 13, PageID# 1748.) But the TCCA did not rely on any such factual finding to affirm the trial court's order denying Watt's motion to substitute counsel and continue the trial. (Doc. No. 5-12.) Watt therefore has not shown that the TCCA's decision on this point "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding[,]" and he is not entitled to relief under § 2254(d)(2). 28 U.S.C. § 2254(d)(2).

### 2. Ineffective Assistance of Trial and Appellate Counsel

The standard applied to Watt's non-defaulted ineffective-assistance-of-counsel claims is "a 'doubly deferential' standard of review that gives both the state court and the defense attorney[s] the benefit of the doubt." *Burt*, 571 U.S. at 15 (quoting *Cullen*, 563 U.S. at 190). The deference to

state courts is the usual AEDPA deference, while the deference to counsel derives from the Supreme Court's opinion in *Strickland v. Washington*, which establishes "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" 466 U.S. 668, 689 (1984). To overcome this presumption, defendants "must show that counsel failed to act 'reasonabl[y] considering all the circumstances'" and "'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Cullen*, 563 U.S. at 189 (alteration in original) (quoting *Strickland*, 466 U.S. at 688, 694). Viewed through AEDPA's "'deferential lens[,]'" *id.* at 190 (citation omitted), the question becomes "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard" *Harrington*, 562 U.S. at 105.

Here, in analyzing the ineffective-assistance-of-counsel claims that Watt presented in his post-conviction appeal, the TCCA discussed *Strickland*'s deferential standard and concluded that Watt "failed to establish by clear and convincing evidence facts supporting a conclusion that either trial or appellate counsel performed deficiently." (Doc. No. 5-24, PageID# 1674.) The TCCA found that:

> Trial counsel's accredited testimony established that, although he lost two weeks' preparation time after [Watt] tried to change attorneys, he was fully prepared for [Watt's] trial. His accredited testimony also established that trial counsel interviewed Ms. Johnson but deemed her potential testimony neither credible nor persuasive. Furthermore, the post-conviction court found that Ms. Johnson's testimony lacked credibility. With regard to his cross-examination of the victim, we agree with the post-conviction court that trial counsel's decision not to attack the six-year-old victim was a reasonable trial strategy.

> [Watt] presented no evidence to suggest that appellate counsel's failure to request oral argument affected the outcome of his appeal. Appellate counsel's accredited testimony established that it was her belief that the appellate brief was the primary vehicle of appellate advocacy. Moreover, [Watt] failed to show how appellate counsel's inclusion in her brief of certain portions of the victim's testimony would have altered the outcome on appeal. As is indicated by our opinion on direct appeal, this court reviewed the trial record in its entirety when considering his challenge to the sufficiency of the convicting evidence.

21

(*Id.* at PageID# 1674–75.) Watt has not provided any argument or authority regarding whether the TCCA misapplied *Strickland* or based its decision on an unreasonable determination of the facts. Presuming that the TCCA's factual findings are correct, as it must, the Court finds that there are reasonable arguments that Watt's trial and appellate counsel satisfied the minimum standards for representation set forth in *Strickland*. *See Harrington*, 562 U.S. at 105. Watt therefore has not shown that he is entitled to relief under AEDPA for any of his non-defaulted ineffective-assistance-of-counsel claims.

## IV.     Recommendation

For the above reasons, the Magistrate Judge RECOMMENDS that Watt's petition (Doc. No. 1) be DENIED.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this report and recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 25th day of September, 2020.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge