IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | | |
|---|---|---|
| WILLIAM JAMES WATT, | ) | |
| | ) | |
| Petitioner, | ) | |
| v. | ) | Case No. 1:17-cv-00064 |
| | ) | Honorable William L. Campbell, Jr. |
| CHERRY LINDAMOOD, Warden | ) | United States District Judge |
| | ) | |
| Respondent. | ) | |

## MOTION FOR CERTIFICATE OF APPEALABILITY

Under Federal Rule of Appellate Procedure 22(b)(1) and 6 Cir. R. 22(b)(1), appellant William J. Watt, who is litigating a petition under 28 U.S.C. § 2254, respectfully moves the Court to certify two issues for appeal regarding his challenge to his Tennessee conviction, as follows.

1.     Did the Tennessee Court of Criminal Appeals (TCCA) rule contrary to clearly established Supreme Court precedent when they held that Watt was not denied his right to counsel of choice?

2.     For purposes of 28 U.S.C. § 2254(d)(2), did the TCCA unreasonably conclude that the assistant public defender stated he would be ready to proceed for trial on the scheduled date despite having abandoned trial preparation for weeks upon learning Watt had retained counsel?

## LEGAL ARGUMENT

I.  Legal standard.

Where a habeas petitioner seeks to initiate an appeal of the dismissal of his petition, the right to appeal is governed by the requirements found at 28 U.S.C.A. § 2253(c) which provides, *inter alia,* that such an appeal may not be taken unless a certificate of appealability is issued by a circuit justice or a circuit or district judge. Fed. R. App. P. 22; 28 U.S.C.A. § 2253(c)(1); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000).

At the certificate of appealability (COA) stage of a habeas proceeding, the only question is whether the applicant has shown that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.  28 U.S.C.A. S 2253(c)(2).  *Buck v. Davis*, 137 S. Ct. 759, 774 (2017) citing *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). This threshold question should be decided without full consideration of the factual or legal bases adduced in support of the claims. *Id.*

II.  The Court should certify the denial of counsel of choice issue.

The Court should certify the underlying substantive issue for appeal, *viz.,* whether the Tennessee Courts deprived Watt of his constitutional right to counsel of choice.  Tennessee courts denied Watt the right to be represented by the lawyer he retained and instead, forced him to proceed with appointed counsel who announced in open court, five days before the scheduled trial, he was not prepared for trial.  This

amounted to compulsory counsel and unacceptable under Supreme Court precedent. *Cf. Faretta v. California*, 422 U.S. 806 (1976) (A defendant in a state criminal trial has a constitutional right to proceed without counsel when he voluntarily and intelligently elects to do so, and that the state may not force a lawyer upon him when he insists that he wants to conduct his own defense.).

The Court adopted the Magistrate Judge's conclusion the TCCA's ruling that Watt was not denied his counsel of choice was not an unreasonable application of Supreme Court law where Petitioner requested a continuance and substitution of counsel seventeen days before a trial scheduled nine months earlier, and retained counsel was unavailable on the one alternative date proposed by the court. (Doc. No. 22, Order at 19). And this Court observed, "Petitioner agrees that the right to counsel of choice is not without limitation and acknowledges that the Supreme Court allows a trial court "wide latitude in balancing the right to counsel of choice against the needs of fairness, and against the demands of its calendar." (Doc. No. 27, Order at 9).

Watt argued, unsuccessfully, the TCCA erred in allowing the trial court to exceed the permissible latitude. For purposes of this motion, Watt contends reasonable jurists could debate whether the TCCA ruling violated Supreme Court law curtailing permissible limitations on the choice of counsel and that the qualified constitutional right to counsel of choice is sufficiently important to deserve further review.

3

A.    The right to choose one's own counsel is an essential component of the Sixth Amendment and under the facts of this case an adequate matter to proceed on appeal.

Although Sixth Amendment law is often concerned with issues affecting indigent criminal defendants, the amendment applies equally to financially capable defendants. "[I]t is clear that when an accused is financially able to retain an attorney, the choice of counsel to assist him rests ultimately in his hands and *not in the hands of the State.*" *Wilson v. Mintzes*, 761 F.2d 275, 280 (6th Cir.1985) (italics added). "[W]ere a defendant not provided the opportunity to select his own counsel at his own expense, substantial risk would arise that the basic trust between counsel and client, which is a cornerstone of the adversary system, would be undercut." *Linton v. Perini*, 656 F.2d 207, 209 (6th Cir.1981), *cert. denied*, 454 U.S. 1162 (1982).

As early as 1932, the Supreme Court stated in *Powell v. Alabama*, "(I)t is hardly necessary to say that the right to counsel being conceded, a defendant should be afforded a fair opportunity to secure counsel of his own choice." *Powell v. Alabama*, 287 U.S. 45, 53 (1932). More recently, the Supreme Court held "[t]he right to select counsel of one's choice, by contrast, has never been derived from the Sixth Amendment's purpose of ensuring a fair trial. It has been regarded as the root meaning of the constitutional guarantee." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 147–48 (2006).

An accused who is financially able to retain counsel must not be deprived of the opportunity to do so.   The Sixth Amendment prohibits a court from unreasonably denying a defendant his counsel of choice. *Wilson v. Mintzes*, 761 F.2d at 278–79.  An

4

issue touching on the "root meaning" of the Sixth Amendment is sufficiently important to deserve further review.

> **B.** A request for a continuance of a trial to secure counsel of choice triggers a balancing test to determine the reasonableness of the request.

The right to counsel of choice is not without limitation. The Supreme Court allows a trial court "wide latitude in balancing the right to counsel of choice against the needs of fairness, and against the demands of its calendar." *United States, v. Gonzalez-Lopez*, 548 U.S. at 152. A leading case on the subject is *United States v. Burton*, 584 F.2d 485 (D.C. Cir. 1978). There the court held that the right to retain counsel of one's own choosing is not absolute, and where a continuance is sought to retain or replace counsel, the right to select counsel must be carefully balanced against the public's interest in the orderly administration of justice. *Id.* at 489.

The Sixth Circuit likewise promulgates a balancing test between the important right to counsel of choice and the court's authority to control its docket. *United States v. Powell*, 847 F.3d 760, 774, 779 (6th Cir. 2017); *United States v. Martin*, 25 F.3d 293, 295 (6th Cir. 1994); *United States v. Krzyske*, 836 F.2d 1013 (6th Cir.1988); *Wilson v. Mintzes*, 761 F.2d at 280 (6th Cir.).

In balancing the competing interests, the trial court "must be sensitive to the defendant's right to counsel of his choice, as well as the public's interest in prompt and efficient administration of justice." *Linton v. Perini*, 656 F.2d at 209. Whether a continuance is appropriate in a particular case depends on the facts and circumstances *Wilson v. Mintzes*, 761 F.2d at 281; *see also*, *United States v. Burton*, 584 F.2d at 490 (what is a reasonable delay for securing additional counsel, once

5

adequate counsel has been obtained, depends upon all of the surrounding facts and circumstances).

C. Supreme Court and Sixth Circuit law guides the facts and circumstances to consider in determining whether the denial of a continuance exceeds the permissible latitude.

Clearly, there are limits to the latitude trial courts have in controlling their dockets. For instance, "a trial court, acting in the name of calendar control, cannot arbitrarily and unreasonably interfere with a client's right to be represented by the attorney he has selected." *Wilson v. Mintzes*, 761 F.2d at 281, quoting, *Linton v. Perini*, 656 F.2d at 209; *see also*, *United States v. Powell*, 847 F.3d at 779. A trial court's discretion to deny a request for a continuance related to the defendant's right to retain counsel of his choice is curtailed and circumscribed. *Id.* at 780 (where there was a complete breakdown in the attorney-client relationship, the insistence that trial go forward without allowing for substitute counsel violated the Sixth Amendment right).

In deciding whether the denial of a continuance to retain counsel of choice was arbitrary and unreasonable, the Supreme Court and the Sixth Circuit look to the circumstances of each case. *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964); *Morris v. Slappy*, 461 U.S. 1 (1983); *Wilson v. Mintzes*, 761 F.2d at 281.

The trial court may interfere with the defendant's right to counsel of his own choice and require the case to proceed "[i]f the court finds that the delay is an attempt to manipulate a trial, or causes prejudice to the prosecution, or creates difficulties for the trial court." *Linton v. Perini*, 656 F.2d at 209-210. "On the other hand, where the request is reasonable, where there have been no prior adjournments, where the

6

length of delay is moderate, and where the adjournment seems to be for legitimate reasons, the court should allow a reasonable adjournment to permit a defendant to have retained counsel of his own choice." *Id*.

The interests to be balanced are articulated in *Wilson v. Mintzes*. The Sixth Circuit identified these seven factors: (1) the length of delay, (2) whether any previous continuances were requested, (3) inconvenience to litigants, witnesses, counsel, and the court, (4) whether the delay is purposeful or is caused by the accused, (5) the availability of other competent counsel, (6) the complexity of the case, and (7) whether denying the continuance will lead to identifiable prejudice. *Wilson v. Mintzes*, 761 F.2d at 281. The key, however, is whether the court has indeed balanced those interests, or instead has acted arbitrarily. A court that sacrifices a Sixth Amendment right without viewing the circumstances of the case as a whole acts arbitrarily. *United States v. Sellers*, 645 F.3d 830, 832 (7th Cir. 2011).

The Court framed the question as "whether the TCCA's application of Supreme Court precedent affording trial courts' "wide latitude" to make scheduling decisions was "objectively unreasonable" . . . and "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility to fairminded disagreement." " (Doc. No. 27, Order, Page ID# 1856) (citations omitted). The *Gonzalez-Lopez* case was cited by the Magistrate Judge and the Court as authority of trial court's "wide latitude" to control their dockets. (Doc. No. 27, Order, Page ID# 1855). In *Gonzalez-Lopez*, the Supreme Court's was addressing whether violating the right to counsel of choice required showing prejudice and/or subject to a

harmless analysis error.[1] *United States v. Gonzalez-Lopez*, 548 U.S. at 146, 152. The holding in *Gonzalez-Lopez* is the denial of the right to be represented by counsel of the defendant's choice is a structural error warranting reversal irrespective of prejudice and not subject to a harmless-error analysis. *Id.* In finding the defendant's Sixth Amendment right was violated, the Court specifically wrote, "[n]one of these limitations on the right to choose one's counsel is relevant here." *Id.* at 152. The *Gonzalez-Lopez* case did not involve an anlaysis, or balancing, of the court's calendar control against the defendant's right to counsel of choice.

D. Reasonable jurists could debate whether the Tennessee courts unreasonably denied the Petitioner counsel of his choice contrary to clearly established Supreme Court precedent.

The TCCA myopic insistence upon expeditiousness in the face of a justifiable request for delay rendered the balancing test an empty formality. The TCCA ruling erroneously permitted the trial court – the State – to choose Watt's counsel in the name of calendar control.

Watt had not made repeated and contumacious requests for continuances of his trial date. Dwight Scott acted promptly to alert the court and prosecutor that substitute counsel had been retained. The request for a continuance was moderate. The case was not proceeding at an unduly slow pace given the seriousness of the charges. *Cf. People v. Williams*, 61 Cal. App. 5th 627, 275 Cal. Rptr. 3d 848, 867 (2021) (two years to trial in a homicide case not considered undue delay). There was nothing in the record that the case was proceeding at an unduly slow pace.

---

[1] The Government conceded that the District Court erred when it denied Gonzalez his choice of counsel. *United States v. Gonzalez-Lopez*, 548 U.S. at 152.

8

Initially the trial court found Watt was not attempting to manipulate a postponement of the trial date. (Doc. No. 5-2, Transcript of Motion to Substitute Counsel, Page ID# 84). When Mr. Scott indicated he was unavailable on the one alternative date suggested by the court, the judge unreasonably and arbitrarily concluded the Watt hired an attorney to delay the trial. (Doc. No. 5-2, Transcript of Motion to Substitute Counsel, Page ID# 89). Nothing indicated any delay in the trial was attributable to any gamesmanship on Watt's part or improper tactics on the part of substitute counsel.

The TCCA noted in its Opinion, the State claimed they would suffer prejudice upon a continuance because the victim was a young child of four at the time of the alleged offenses. *State v. Watt*, No. M2012-01487-CCA-R3CD, 2014 WL 97291, at *1 (Tenn. Crim. App. Jan. 10, 2014); Doc. No. 5-12, Page ID# 787). This was a faux objection by the State. In contrast, during the hearing the State's attorney suggested alternative trial dates offering adequate time be provided for retained counsel to be prepared. (Doc. No. 5-2, Transcript of Motion to Substitute Counsel, Page ID# 87). Any suggestion of prejudice to the State was hollow.

In considering whether other competent counsel was available, the TCCA unreasonably concluded appointed counsel "said he could be ready to proceed with trial on January 23, 2012." *State v. Watt*, No. M2012-01487 at *17. Rather, Assistant Public Defender, Mike Engle, stated he was unprepared to proceed to trial. (Doc. No. 5-2, Transcript of Motion to Substitute Counsel, Page ID# 83-84).

In response to the trial court's inquires, Mr. Engle explained he abandoned all trial preparation upon learning Watt had retained Dwight Scott on December 30, 2011. (Doc. No. 5-2, Transcript of Motion to Substitute Counsel, Page ID# 84). Mr. Engle elaborated that he had ceased working on the case, cancelled a December 31st important meeting with Watt, and "have not had any contact with him since then and I have not done the preparation that will be necessary for trial on the six counts on Monday morning, no, sir." *Id.*[2]

Under even the AEDPA standard, the finding that Watt's right to counsel of choice was not violated was a failure by the TCCA to apply clearly established Supreme Court precedent brought about, in part, by an unreasonable finding of fact that Mr. Engle was prepared to try the case. For the issuance of a COA, reasonable jurist could debate whether competent counsel was or was not available to try the case where appointed counsel announced he was not prepared five days before trial.[3]

The TCCA's Opinion affirming the denial of counsel of choice had the effect that Watt proceeded to trial with unprepared state appointed counsel. That amounted to "no choice at all." *See*, *James v. Brigano*, 470 F.3d 636, 644 (6th Cir. 2006).

---

[2] The hearing on Mr. Scott's motion to reschedule the trial was five days before the scheduled trial. It was during the hearing when Mr. Engle informed the trial court he was unprepared to try the case. (Docket Entry no. 5-2, Transcript of Motion to Substitute Counsel, Page ID# 82).

[3] The State prosecutor expressed concern that appointed counsel was not prepared to try the case and a conviction might be overturned on a post-conviction claim of ineffective assistance of counsel if the trial court force the matter to trial. . (Doc. No. 5-2, Transcript of Motion to Substitute Counsel, Page ID# 86).

The Court adopted the Magistrate Judge's conclusion the TCCA did not act unreasonable affirming the denial of a continuance by substitute counsel made seventeen days before trial that had been pending for nine months. (Doc. No. 27, Order, Page ID# 1856). Upon considering a similar situation, the Seventh Circuit held the defendant was deprived of his Sixth Amendment right where the motion to continue to allow substitution of counsel was make only five days before the scheduled trial. *United States v. Sellers*, 645 F.3d 830, 834 (7th Cir. 2011). In *Sellers*, the district court was concerned about substitute counsel's "eleventh-hour" filing for a continuance before denying the motion to continue of the trial. *Id.* at 835. Relevant to our analysis, is the rational by the Seventh Circuit. "But a court that sacrifices a Sixth Amendment right without viewing the circumstances of the case *as a whole* acts arbitrarily." *Id.*, at 837 (italics added). Here, the TCCA focused only on the trial court's interest in control of its calendar and failed to address Watt's circumstances as a whole.

Jurist could reasonably debate whether Watt's motion to substitute counsel was reasonable and timely given the circumstances of the case. Watt was not attempting to delay the trial unreasonably and was not engaging in dilatory tactics. Considering there was no prior requests to postpone the trial, the length of delay was moderate, and most important, appointed counsel declared he was unprepared to try the case on the scheduled court date. In the end, legitimate considerations must be balanced against the reasons supporting the motion for a continuance to accommodate new counsel. Reasonable jurist could debate whether failure to perform

11

the balancing test and insistence that trial go forward violated Watt's Sixth Amendment rights.

## CONCLUSION

William J. Watt respectfully seeks certification of the foregoing issues.

Respectfully submitted,

**McNALLY LAW**

By: *s/Patrick T. McNally*
   PATRICK T. MCNALLY (Tenn. Bar #010046)
   40 Burton Hills Blvd.
   Suite 200
   Nashville, Tennessee  37215
   (615) 480-8921
   attorney@patrickmcnallylegal.com


*Attorney for Petitioner, William Watt*


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Motion for a Certificate of Appealability has been electronically filed with the clerk of the court by using the CM/ECF system, which will send a Notice of Electronic Filing to Assistant Attorney General, Nicholas S. Bolduc, counsel for Respondent, of the Federal Habeas Corpus Division, P.O. Box 20207, Nashville, Tennessee 37202, on this the 19th day of April, 2021.

   *s/Patrick T. McNally*
   PATRICK T. MCNALLY